The moral argument is people v. Scholes. May it please the Court, Mr. Daly? My name is Nancy Vinson. I am with the Office of the State Appellate Defender in Springfield, and I am here today on behalf of the appellant, Brian Scholes. The parties agree as to the error in Argument 2, so with the Court's permission and if there are no questions on Argument 2, I intend to focus today on Argument 1. And Argument 2 is in the alternative to Argument 1 in any event. So, with that, in a nutshell, the question presented by Argument 1 is whether the label or the actions are what matter here, and it is Mr. Scholes' position that actually both matter. First, the label. The State labeled its motion a motion to not prosecute, and all they asked the Court to do, all they said was the State of Illinois moves to not prosecute said case. That order was signed. It was signed on February 1, 2010. What the Court told, or what the State told the Court, and equally importantly, Mr. Scholes, about its intentions, is that a non-prosecution means that it is a formal entry upon the record by a prosecuting attorney in a criminal case where he declares that he will no longer prosecute this case, either as to some of the defendants or all of the defendants or altogether. It is a voluntary withdrawal by the prosecuting attorney of the present proceedings in the criminal charge. So when the State here filed its motion to not prosecute, what it told Mr. Scholes is that it intends to drop the prosecution entirely, at least barring any bringing back during the period where the statute of limitations has not run. And the parties after the trial court grants that motion to not prosecute are in the exact same position as they were the day before the State filed its information. Also, it's the State's action that matters. It's what provided Mr. Scholes with notice of the State's intentions, and it's what the State told Mr. Scholes. They were no longer interested in prosecuting him on this case. He was free to go, so far as these charges went. And that's important for a couple of reasons, and it makes a difference. What it means is he is entitled to assume that the State meant what it said. Once he's told that the State no longer intends to prosecute him on the case, then, for example, he need not keep up with potential witnesses. This case isn't hanging over his head. He isn't held to answer to bond. He doesn't have to answer to a pretrial release officer for purposes of a speedy trial period. If the case is gnarly, there is no speedy trial provision to run. You're saying it's equal to dismissal. It is exactly a dismissal. It's not even equal. So the motion wasn't dismissed. That is exactly what it is. The motion wasn't dismissed. The case was a gnarly process. He could have said, you're saying he could have said, I move to dismiss? Well, what the State intended to do was be stricken with leave to reinstate, which is commonly known as the SOL. You're right. And that's sort of a dismissal, but not really, because it's still pending during the period. It just means that for right now, we don't intend to do anything with this case. But we can change our mind upon motion, which is what the State thought it did. But a gnarly prosecution is a voluntary dismissal of the charge. So it is a motion to dismiss. It just has a different implication from what an SOL procedure would be. If I'm answering the Court's question. Well, I just wondered, does SOL change the meaning of gnarly process? Is that what you're trying to say? I don't think that it doesn't change the meaning of a gnarly process. It's not the same thing. It's an entirely different procedure, and generally, you really only find it in Cook County. I did a little research, and I wasn't able to find too many cases where it's done outside of Cook County. It's like DWP. Same as DWP. I'm not totally sure that I'd ever even seen DWP at least south of I-8. But I don't think they're the same thing, and I don't think they can be comparative, and I think that's the problem. Over the course of time, these words have gotten kind of commingled together, and I think it's important to note that the 2nd District, and more importantly, the Illinois Supreme Court, has recently made it very clear that there is a difference, and they intend to enforce that difference. Oh, I'm sorry, I thought you were about to say something. No, I was just looking at a case. And I did want to point out, very briefly, People v. Hughes, which is the last Illinois Supreme Court case that talked about this topic from 2004, and I think the word the Supreme Court used in that case is very important, and the word they used is re-prosecute, in terms of what the state must do if it changes its mind and decides it's going to prosecute a defendant after all. They didn't use the word resume prosecution. They used the word re-prosecute, and what that means is that, after not only prosecute, those charges no longer, they're done. There's nothing left to reinstate. There's nothing left to resume prosecution on. If the state changes its mind after not only prosecute, what it's got to do is refile the charges. It must re-prosecute. And here, that's not what the state intended to do, and its argument, at least on the motions pre-trial and the motion for new trial, make it very clear that that's not what the state intended to do. It wasn't intending to vacate that motion for not only prosecute. It was not intending to refile the original charges. Wasn't there language in the order about the charges were refiled and reinstated? What the order says is that the people pray that the charges of unlawful possession of methamphetamine manufacturing materials and unlawful possession of methamphetamine previously filed be reinstated. So it is not... That's the motion. Yes, that is the motion. The order, and I'll find it in here. The order said that it was, quote, refiled and reinstated. It couldn't be refiled because the state never asked to refile it. And more importantly, for purposes of the court's order, that previous knowledge had never been vacated. That's not what that order says. And at least people read the plea, which is the 1989 case in the 2nd District, make it very clear that that's what's got to happen. If you want to reverse the Nali Prosecution, you've got to vacate that order and refile the charges. Now, in the plea, because the state used the term pray to refile in its motion, it construed that as a request to refile the charges. But that's not what the state here asked to do. The state asked only to reinstate. And during its argument, it never asked to refile. It never asked to vacate that previous knowledge. And the court's order is one thing, but its words surrounding that order is something else. And what the judge there just basically said was, well, okay, that's fine. And then when Mr. Scholl's attorney asked for a new preliminary hearing, his response was, basically, we've already done one. I already found a probable cause. So the court also believes that it's that old, that all it's doing is reinstating those original charges. Nothing has been refiled. Nothing has been vacated. And that's the problem. Because there's nothing left to reinstate. Those charges no longer exist. And Mr. Scholl's has been tried and convicted on charges that do not exist. They don't exist to this day. If the state wants to change its mind about a Nali Prosecution, what it's got to do is request to vacate that Nali and refile the charges. Because that's what gives the defendant the notice of what the state intends to do. It can't merely pick up where it left off after a Nali Prosecution because those charges don't legally exist. And the remedy here is what it was in People v. Neal, which is the 1st District case, and that is to reverse this case and vacate the convictions. If the state wants to refile the charges, it has the right to do so, so long as the statute of limitations hasn't run or there aren't any other problems therein. And the state, I suppose, has the right to do that. But in terms of this particular conviction, it cannot stand because there are no charges. And the reason that's actually important is even though he had a preliminary hearing once, those charges no longer exist. Because the Illinois Constitution requires that nobody be held to answer to charges unless there's a finding of probable cause. That's done in one of two ways. Indictment after a grand jury and a preliminary hearing after the filing of an information. And here, too, Mr. Shull specifically asked for a new preliminary hearing and new charges, which he was not given. He has the right to a preliminary hearing and a finding of probable cause according to the Illinois Constitution before he's required to answer to these charges. And if the state had wished to employ the SOL procedure, it could very easily have done that. All it would have had to do is file a motion to employ that procedure. And then they could have reinstated it on the motion and there would have been no problem. But the problem, it turned out there was a problem. And the problem was that the state used the wrong procedure and then the wrong method of reversing that procedure. Thank you, Counsel. Thank you. Counsel? May it please the Court. Mr. Benson. I want to start with a prayer. It's going back to the issue of the strip and Lee, Justice Welch, mentioned. There's no statutory or really common existence of something called SOL. It's an artifice that sort of exists solely in Cook County. But there is a court that was cited in the DeBlea case of the Federalized Medical Papers of Standards which endeavored to undertake an attempt to draw a distinction between the Nali process and the SOL. The distinction probably best defined is this. The SOL is a motion filed by the state which essentially freezes a case in a particular posture and then all the state has to do then is basically ask the court to unfreeze it. It's probably the simplest way to describe it. The distinction the standards court set was that a Nali would require the state to actually reinitiate the charge by filing a new charge which is defended as argued here. Now, this is a discussion that predates the Hughes decision and I want to now turn to that because although the terminology re-prosecute is used in the Hughes case, you have to look at exactly what the particular issue was that the court was considering. In Hughes, the court identified the issue before the court as a dispute about what the procedural steps the state has to take in order to re-prosecute a defendant on the Nali process charge. The defendant's position, and I'll state it, and I'll quote it here, was the state may only re-prosecute a defendant by commencing a new proceeding and re-filing the new charges. The state's counter to that, however, was that the state has the opportunity or has the right to essentially have or move to vacate and reinstate an identical charge under what circumstances. The court has to decide under what circumstances that can be done. So when we talk about re-prosecute, it actually has sort of two formulations. The formulation of the defendant's argument, which is there has to be a new charge, new preliminary hearing, much as the defendant argued below. Or can the state move to vacate a Nali process and then have the charge reinstated? Now, the state did not move to vacate. That's another issue I'll get to in a moment. So we're sort of progressing down the line from the SOL to the Nali process. To Hughes, and what Hughes identified as the two distinct, as the distinct issue in behalf of his opposing positions in the party. In a nutshell, what the Hughes court essentially decided is that the court has an inherent power to vacate any order that it has so that in the exercise of that inherent power, it can vacate a prior order, in this case it would be the order of the Nali process, and then reinstate the charge. So the ultimate conclusion was that the state does not have to refile the charge. That the state can, in fact, move to vacate the earlier Nali process and then have the charge reinstated. Now, in the case we have here, before the court, the state did move to Nali process. It then filed a motion to reinstate.  to vacate the order of Nali process. It simply filed a motion, which made an attempt to sort of comply with the due process ideas, i.e. that no double jeopardy is involved and that the defendant would not suffer any prejudice. The court stated, at least I think it articulated explicitly, that it was going to grant the order and consider the charges to be reinstated and refiled. But as the defendant points out, the state didn't exactly, precisely ask for that itself. Now we talk about the Glick case, because that's really kind of the case that the state doesn't have to refile a charge. We know that the artifice of the SOL versus the Nali process is not really so distinct anymore because the distinction drawn by the court in the Stevens case, Sanders case, is not really existing because there is no need to refile a charge. So the question then becomes, does the state have to, as a matter of formality, move to vacate the early order of Nali process and then have the charge reinstated? It's an interesting question and I concede at least as much. The only case I'm pointing to is the Glick. And the Glick does say, as the defendant argues, that that is a prerequisite. Now, a request to Nali process is a power that's held solely by the state. The court can't order a Nali process and so the state has to request an Nali process. So in that sense of it, it's not so much an order of the court as it is an order following the state's request to have a particular action done. In other words, if the state has the power to Nali process, it also has the exclusive power to un-Nali process, for lack of a better expression. So what I wanted this court to focus upon is that we have to decide whether the absence of a formalized request to vacate an earlier Nali process is an impediment to a court undertaking what it did in this case, which is essentially retaking the charge. Despite what the Glick says, I would urge this court to find that that is not really a correct result. And the reason for that is this. We know from Hughes, and Hughes makes it clear, that the progression of this legal analysis that says the state can move to vacate follows from the inherent power of the court to vacate earlier orders that it entered. So when we're talking about inherent powers, we're not talking about, we're talking about a power that the court has that it is aware of, that it's intrinsically aware of. So, we know, as the defendant correctly argues, that when the case is Nali process, it's stopped. The Watson case that is referenced both in the Glick and in Hughes makes probably an apt description that it's similar to a non-suit or discontinuous in the civil suit and it leaves the matter in the same condition in which it was before the commencement of the prosecution. Now, the defendant focused on what the commencement of the prosecution means, but what it really boiled down to is essentially that we're reinstating essentially the prosecution in this case of convolution of the state. If the court is aware of its inherent powers, and if the court is presumed to be aware of the law, to reinstate a charge, then it perforce means that any earlier order that the court had entered, Nali processing the case, would have to be, as a prerequisite, vacated. For the court, obviously, it would make no sense for the earlier order to be vacated and the subsequent, the earlier charge reinstated. So, I argue, and I think that essentially Dublique is an exalted form over substance, that if the state moves to do something, it satisfies the due process requirements as far as double jeopardy and prejudice against the defendant is concerned. And the obvious implication of the state's request is to invoke the inherent power of the court to vacate an earlier order to reinstate a charge that the state doesn't go through the formality of actually adding we move to vacate doesn't really change that because what you're really doing then is you're saying that the absence of that precludes the court from exercising an inherent power. And that simply can't be the case. And again, is there a due process or impairment of liberty interest involved if the state, according to your argument, I take that back, if the court, according to your argument, has the inherent power that the state in its motion explicitly prayed for? Well, I think the point I'm trying to make, Your Honor, is that I'm not really saying that what the state is doing is asking the court to go beyond its power. It's missing words. But the missing words are essentially implied in what the state is requesting the court to do. Let's assume that the state has the power if asked. If the state does not explicitly ask, can the court do so not on the specific request of the state in its motion but in its inherent power? Well, I think, and that's kind of why I mentioned earlier that the Nolencross power is a state power. So the court, while it has the power to make the orders, it's all contingent upon the state's power to both exercise the right to ask for a Nolencross and its powers of prosecuting authority to undo what it did before or ask to have undone. It's a process. Otherwise the court would be acting as a prosecutor. Absolutely. But then let's move forward. Okay. If the state does not explicitly ask for vacation of the Nolencross order, can the court do so or has it gone beyond its power? Or has it infringed on due process or liberty? I think it's always going to depend upon your honor exactly. It's going to depend, depending on what the state is asking the court to do. So in other words, if the state is just seeking to un-Nolencross something in the Nolencross and the court does that, then the court has exercised its proper power even if the state hasn't explicitly moved the court to vacation. What about in this case? The state, the court ordered, okay, I have the language, the motion that the state asked for reinstatement. So how does that concept work? Well, I, again, let's be careful not to confuse terminology with what actually happened. I'm not going to argue that the charge is actually refiled. If that had been the case, I would have explicitly argued that because the fact I could draw a duplicate is good authority for the state. The state had asked for reinstatement of the charge, but the court decided to characterize it as refiling. I don't think it necessarily means that it didn't happen. Let me answer it this way. The court denied the defendant's request for a preliminary hearing. So the clear implication of what the court did was reinstatement and not refiling because if it had considered what had happened would be correct. But what I'm saying is that what the court did is whatever it's sort of a loose utilization of terminology is concerned because we can get a reinstatement and refiling it all. It all sort of melds into one particular safe course of action and brings the case back alive. That what actually happened here is consistent with the state's request and that's a reinstatement of the charge. So the proposition is that it's consistent with the state's request was and therefore the court's exercise of authority was perfectly congruence with what the state requested the court to do. I hope that answers some of it. I think so. Thank you, counsel. Counsel? And I'll give you a couple extra minutes also. Let me ask the reverse of what I asked the opposing counsel. If an analogy in civil laws that the cost is voluntarily dismissed and then refiled within the time period, one can still use various aspects of judicial admissions or discovery of the prior case, the case that had progressed to a certain point before it was voluntarily dismissed. Under those circumstances, why wouldn't the request for reinstatement and the court order granting that in this case apply also and it moves from this point? Well, I think the last exchange is the perfect demonstration of why an SOL and an ANALI is different and why they cannot be co-meet. To go back a little bit, well, first of all, a civil voluntary dismissal has a different function. All litigants have a due process right to notice them to be heard. But the additional problem in criminal court is that the defendant has also that constitutional right not to be held to charges without defining probable cause and that's why there is a difference between ANALI and an SOL. The ANALI is what makes it difficult for the defendant to come into play. A voluntary dismissal under I think it's 1301, if I remember correctly, does not function that way. And usually those are plaintiff non-suits where they didn't get somebody served or that sort of situation. Here, what you've got is you don't have the prosecutor just failing to get somebody served. And this is where the inherent power of the state comes into play as well. The state has the power to choose to charge. They have the inherent and almost unfettered discretion not to charge or to change their mind about charging and that's fine. But then the state must announce what it intends to do. And the problem that I believe the last set of questions developed was is the court then supposed to clean up what the state, if the state imperfectly requests. A remedy is the court, the court doesn't have the inherent power to be the prosecutor and decide that it was a nollie or decide that it was an SOL. It's the state that's got to make that announcement and it's the court's inherent authority to enforce those orders. But I don't believe the court has the inherent authority to change those orders or to clean up an imperfect request. And the law that developed here as both Mr. Scholes' brief and the state's brief amply demonstrate is this got very confusing. And starting with Dublique in 1989 and the Illinois Supreme Court more recently, they started cleaning it up and there's a reason it needs to be cleaned up and this is it. So that we don't have this confusion, so we don't have this argument so that it can be very clear to all parties at the circuit court level what's going on and that this sort of situation doesn't occur. And I don't believe that the court does have the inherent authority to go beyond what the state has asked for. If the state has asked for a nollie prosecute, then of course the court has the inherent authority and indeed the duty to actually enforce that order because it is the state's inherent authority to make that decision. However, if the state decides that it wants to change its mind, then the state has to ask for the right remedy. It's not the court's job to fix the remedy if the state didn't ask for what it wanted. If the state didn't ask for what it wanted, then it's not the court's job to do the state's job for it. And the defendant has the right to notice  remedy for the right problem. And the court has no further questions? Thank you. I don't believe we do have any further questions. Thank you. Thank you. Thank you. We appreciate the briefs and arguments that counsel will take this case under advisory. The court will be in a short recess and then we'll resume our part of the hearing. All rise.